| JAMES L. CANNELLA, Judge.
The Defendant, Corey Jackson, appeals from his conviction of distribution of marijuana and his enhanced sentence, as a second felony offender, to 15 years imprisonment at hard labor, without benefit of probation or suspension of sentence. For the reasons which follow, we affirm.
On July 10, 2000, the St. John the Baptist Parish grand jury indicted the Defendant on one count of distribution of marijuana, in violation of La. R.S. 40:966(A)(1), which allegedly occurred on May 4, 2000. The Defendant was arraigned on November 13, 2000 and he pled not guilty. On March 19 and 20, 2002, the case was tried before a jury.
Detective Sergeant Troy Hidalgo, a state witness, testified that he was employed by the St. John the Baptist Parish Sheriffs Office as a narcotics investigator. He further testified that, on or about May 4, 2000, he and other officers were involved in an undercover narcotics operation targeting street level narcotics distributors in documented high crime areas of St. John the Baptist Parish. Detective Hidalgo explained that, in the undercover operation, they used undercover agents from other agencies in Louisiana who were commissioned police officers. During this operation, Agent Daniel Declouet, a narcotics agent |3with the St. Mary Parish Sheriffs Office narcotics task force, was utilized as an undercover officer.
Agent Declouet, using an unmarked vehicle that was equipped with a video and audio recording device, explained that the videotape from the transaction was used to identify the individual from whom the undercover agent purchased narcotics.
The State introduced evidence to show that, on May 4, 2000, at approximately 4:45 p.m., the Defendant sold a half-ounce bag of marijuana for $50 to undercover Agent Declouet on Jasper Street in LaPlace. The transaction was videotaped. Detective Hidalgo, a member of the surveillance team, testified that he identified the Defendant as one of the two African-American males shown in the videotape selling narcotics to Agent Declouet. Agent De-clouet identified the Defendant in court as the man who sold him the marijuana.
After Agent Declouet purchased the marijuana from the Defendant, he placed it inside an evidence bag, sealed it, marked it with a number, the date, the time of the transaction, and placed it in the glove compartment of his vehicle. At the end of the day, Agent Declouet turned over to Detective Hidalgo, the bag of marijuana along with the evidence from three other narcotics transactions that he made that day, *163 each labeled with the date and time of purchase.
Scott Roccaforte, qualified as an expert in the field of forensic science, testified that he performed an analysis of a substance, State’s Exhibit 1, and that the green vegetable matter submitted was determined to contain marijuana.
The Defendant did not call any witnesses.
After hearing the testimony, the jury found the Defendant guilty as charged. On March 25, 2002, the Defendant filed a motion for post-verdict judgment of acquittal and a motion for new trial. The motion for new trial was denied on |4March 25, 2002, and the motion for post-verdict judgment of acquittal was denied on April 3, 2002.
The State filed a multiple offender bill of information and the Defendant denied its allegations on April 3, 2002. On May 8, 2002, the trial judge found the Defendant to be a second felony offender. On June 4, 2002 the Defendant filed an objection to the multiple bill and a motion to reopen the multiple bill hearing. On August 1, 2002, the trial judge denied the motion to reopen the multiple bill hearing. On September 5, 2002, the trial judge sentenced the Defendant to 15 years in the Department of Corrections without benefit of probation or suspension of sentence. On September 5, 2002, the Defendant filed a motion for reconsideration of sentence which was denied. He also filed a motion for appeal which was granted. On appeal, the Defendant assigns one error.[1]
On appeal, the Defendant contends that the evidence was grossly insufficient to support the conviction of distribution of marijuana because, (1) the arresting officer only identified the Defendant from a videotape that had been previously duplicated, (2) the officers only identified the Defendant in the videotape and not the other individual, due to the complaints that the Defendant made regarding Detective Hi-dalgo’s treatment of him after his arrest, (3) neither officer could identify any distinctive features about the Defendant’s appearance that would cause them to remember him rather than the other individual in the videotape, (4) the officers identified the Defendant in court despite the Defendant wearing an eye patch in court and neither of the men in the videotape wearing an eye patch, (5) Agent Declouet placed the alleged drugs in his glove compartment and continued conducting drug buys, instead of turning the alleged drugs over to a senior officer, thus causing a break in the chain of custody, (6) the alleged drugs were commingled with several other substances obtained during the same undercover | ,soperation, and (7) the State did not satisfy the factors set forth in State v. Johnson, 00-1528 (La.App. 4th Cir.2/14/01), 780 So.2d 1140, writ denied, 00-10916 (La.2/1/02), 807 So.2d 854, in that there was no testimony that the Defendant had a history of drug dealing, there was no evidence that the drugs were packaged in such a manner as to give the inference of distribution, and there was no drug paraphernalia found on the Defendant. The Defendant also argues on these same grounds that the trial judge erred in denying his motions for new trial and post-verdict judgment of acquittal.
Under La.C.Cr.P. art. 821(B), a post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the State, does not reasonably permit a finding of guilty. State v. Thibodeaux, 98-1673 (La.9/8/99), 750 So.2d 916, 926, cert. *164 denied, Thibodeaux v. Louisiana, 529 U.S. 1112, 120 S.Ct. 1969, 146 L.Ed.2d 800 (2000).
In reviewing the sufficiency of the evidence, due process requires the reviewing court to determine “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under Jackson, a review of a criminal conviction record for sufficiency of evidence does not require a court to ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. A reviewing court is required to consider the whole record, and determine whether a rational trier of fact could have found guilt beyond a reasonable doubt. The actual trier of fact is presumed to have acted rationally until it appears otherwise. State v. Mussall, 523 So.2d 1305, 1310 (La.1988).
In applying this standard, the reviewing court will not assess credibility nor re-weigh the evidence. State v. Rosiere, 488 So.2d 965, 968 (La.1986). The trier of fact evaluates credibility and, when faced with a conflict in testimony, is free to | r,accept or reject, in whole or in part, the testimony of any witness. State v. Silman, 95-0154 (La.11/27/95), 663 So.2d 27, 28.
The Defendant first takes issue with the identification evidence. In State v. Neal, 00-674 (La.6/29/01), 796 So.2d 649, 658, reh’g denied by, clarified by, 00-674 (La.9/21/01), 796 So.2d 649, cert. denied, Neal v. Louisiana, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002), reh’g denied, 535 U.S. 1075, 122 S.Ct. 1957, 152 L.Ed.2d 859 (2002), the Louisiana Supreme Court set forth the law regarding the identification of a defendant as the perpetrator:
As a general matter, when the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Smith, 430 So.2d 31, 45 (La.1983); State v. Brady, 414 So.2d 364, 365 (La.1982); State v. Long, 408 So.2d 1221, 1227 (La.1982). However, positive identification by only one witness is sufficient to support a conviction. See State v. Mussall, 523 So.2d 1305, 1311 (La.1988) (generally, one witness’s positive identification is sufficient to support the conviction); State v. Ford, 28,724 (La.App. 2nd Cir.10/30/96), 682 So.2d 847, 849-50, writ denied, 99-0210 (La.5/14/99), 745 So.2d 12.
Further, this Court has held that the testimony of a single undercover officer is sufficient to convict a person charged with distribution of drugs. State v. Slocum, 01-207 (La.App. 5th Cir.6/27/01), 791 So.2d 143, 148.
In order to convict the Defendant of distribution of marijuana, La. R.S. 40:966(A)(1) requires that the State prove, beyond a reasonable doubt, that the Defendant knowingly or intentionally distributed marijuana, a Schedule I controlled dangerous substance. State v. Carter, 29, 972 (La.App. 2nd Cir.12/10/97), 704 So.2d 832, 834.
La. R.S. 40:961(14) defines “distribute,” in part, as meaning “to deliver by physical' delivery.” La. R.S. 40:961(10) defines “deliver” as meaning the “transfer of a controlled dangerous substance whether or not there exists an agency relationship.” In addition, jurisprudence has defined “deliver” as transferring 17possession or control. State v. Martin, 310 So.2d 544, 546 (La.1975); State v. Parker, 627 So.2d 210, 212 (La.App. 4th Cir.1993), writ denied, 93-2956 (La.3/11/94), 634 So.2d 403.
*165 The Defendant claims that the evidence was insufficient to support the conviction because the arresting officer only identified the Defendant from a videotape that had been previously duplicated. However, Sergeant Hidalgo testified that he had custody of the original videotape and that he made the identification of the Defendant from that tape, which he duplicated the night before trial. This contention is without merit.
The Defendant next argues that the officers only identified the Defendant in the videotape and not the other individual, due to the complaints that the Defendant made regarding Detective Hidalgo’s treatment of him after his arrest. There is no evidence to support this contention. Detective Hi-dalgo testified that he did not know that the Defendant had reported him. Moreover, whether anyone else is identified is irrelevant to the identification of the Defendant.
The Defendant contends that the identification should be discounted because neither officer could identify any distinctive features about the Defendant’s appearance that would cause them to remember him, rather than the other individual in the videotape. We find it irrelevant whether either officer could identify distinctive features about the Defendant’s appearance. What is relevant is that both officers positively identified the Defendant in court as the individual who sold drugs to Agent Declouet. Additionally, Agent Declouet testified that he had talked to the Defendant the day before his arrest regarding the purchase of drugs. Therefore, because Agent Declouet had the opportunity to see and talk to the Defendant on two different days, the jury could have reasonably found that he had a good memory of the Defendant’s appearance. This argument is without merit.
|sThe Defendant also argues that the officers’ identification of him is suspect because they identified him in court wearing an eye patch even though neither of the men in the videotape wore an eye patch. Again, the relevant fact here is that Agent Declouet and Detective Hidalgo both identified the Defendant as the perpetrator of the offense. Although Sergeant Hidalgo admitted that the Defendant’s appearance in court was different from his appearance at the time he was arrested, in that he had a little more hair and an eye patch in court, Sergeant Hidalgo identified the Defendant in court as the individual who was shown in the videotape selling drugs to Agent Declouet. Thus, contrary to the Defendant’s argument, it seems that the officers’ ability to identify him in court despite a disguise evidences the certainty of their identification rather than its unreliability.
Based on the foregoing and our review of the record, we find that the evidence was sufficient to establish the identity of the Defendant as the individual who sold Agent Declouet marijuana on May 4, 2000. The transaction was videotaped and shown to the jury. When Sergeant Hidalgo viewed.the videotape, he identified the Defendant as the individual who sold the marijuana to Agent Declouet. Additionally, both Sergeant Hidalgo and Agent Declouet positively identified the Defendant in court. The Defendant transferred possession of the marijuana to Agent Declouet, who, in turn, gave the Defendant $50. Scott Roccaforte testified that the substance in question tested positive for the presence of marijuana.
The Defendant argues that the evidence was insufficient to support the conviction because Agent Declouet placed the • alleged drugs in his glove compartment and continued conducting drug buys, thereby breaking the chain of custody, in *166 stead of turning the alleged drugs over to a senior officer. The Defendant further contends that the evidence was insufficient, because the alleged | fldrugs had been commingled with several other substances obtained during the same undercover operation.
Agent Declouet testified that, after he purchased the marijuana.from the Defendant, he placed it inside an evidence bag, sealed it, marked it with a number, the date and time of the transaction and placed it in the glove compartment of his vehicle. Agent Declouet elaborated that he labeled the bags with the date and time of purchase so that he would know which bag went with which purchase. He testified that, in this case, he purchased the marijuana on May 4, 2000 at 4:45 p.m. and he made no other purchases at that time. Agent Declouet further testified that, at the end of the day, he turned it over to Sergeant Hidalgo, and that the evidence never left his possession. Thus, we find no merit in the Defendant’s arguments concerning the broken chain of custody of the evidence or the lack of connection of the evidence to the Defendant.
The Defendant argues that the evidence was insufficient to support the conviction, because the State did not satisfy the factors set forth in State v. Johnson, 00-1528 (La.App. 4th Cir.2/14/01), 780 So.2d 1140, writ denied, 00-10916 (La.2/1/02), 807 So.2d 854, in that there was no testimony that the Defendant had a history of drug dealing, there was no evidence that the drugs were packaged in such a manner as to give the inference of distribution, and there was no drug paraphernalia found on the Defendant. The defendant in Johnson was convicted of possession with intent to distribute after officers observed him exiting his house carrying a grocery bag which was later found to contain one pound of marijuana. Three one-pound packages of marijuana were subsequently found in his house, along with small sandwich bags each containing one ounce of marijuana.
On appeal, he contended that there was insufficient evidence to prove that he intended to distribute'the marijuana. The State contended that four pounds of Immarijuana were found, and that quantity refuted the defendant’s argument that the marijuana was for his personal use. In analyzing the case, the appellate court stated that there were five factors that were helpful in determining whether circumstantial evidence was sufficient to prove the intent to distribute a controlled dangerous substance, (1) whether the defendant ever distributed or attempted to distribute the drug, (2) whether the drug was in a form usually associated with possession for distribution to others, (3) whether the amount of drug created an inference of an intent to distribute, (4) whether expert or other testimony established that the amount of drug found in the defendant’s possession is inconsistent with personal use only, and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.
Upon review, it is clear that the Defendant has mistakenly relied on the Johnson case. Johnson is distinguishable from the instant case and, therefore, inapplicable. In Johnson, the defendant was not caught actually distributing the drugs as was the Defendant here. Thus, the fact of distribution had to be proven circumstantially from the evidence like packaging, quantity, etc. In this case, the Defendant was caught actually distributing the marijuana. Proof of distribution in this case was direct. Thus, the Johnson factors or not applicable. They only apply where actual distribution is not proven and the state rests its case on circumstantial evidence to prove the intent to distribute. This argument has no merit.
The Defendant in his pro se brief raises two related contentions regarding the suf- *167 ficieney of the evidence which are not found in his counsel’s brief. First, the Defendant argues that the State failed to prove that he had knowledge of the drugs that the agent wanted to purchase. And, second, the Defendant contends that there was no evidence presented at trial to suggest that he knew what the agent and the other individual had discussed before the Defendant arrived. While we are not In certain what relevance the Defendant’s arguments here have, we find that both of these contentions are refuted by the evidence.
The videotape, State’s Exhibit 3, dated May 4, 2000, at approximately 16:44 hours, which was shown to the jury, shows an African-American male (Male # 1). The officer can be heard, but not seen. The following conversation then occurred: Officer: “What’s up, what’s happening?” Male # 1: “What you want?” Officer: “I want a half man. I talked to the dude yesterday and he said he had a half for me for 60.” At that point, another African-American male approaches the vehicle (Male # 2, the Defendant). Male # 1 turns to the Defendant and says: “Yeah, he got one right here for 50.” Officer: “Let me see.” Following this conversation, Male # 1 walks away and the Defendant comes up to the window. A rustling noise, presumably the exchange of drugs for money, can be heard although it cannot be seen on the tape. Agent Declouet testified that the Defendant handed him the marijuana in exchange for $50. The Defendant subsequently walks away from the vehicle.
After viewing the videotape, and hearing the evidence, it is clear that the Defendant knew that the agent and the other individual were discussing the purchase of drugs because immediately after the other individual said, “Yeah he got one right here for 50,” the Defendant approached the window of the vehicle and an exchange of marijuana for $50 took place. Thus, we find that the Defendant’s claims regarding lack of knowledge of the drugs are without merit.
Based on the foregoing, we find no error in the trial court’s rulings denying the Defendant’s motion for new trial and his. motion for post-verdict judgment of acquittal. We also find that the evidence was sufficient, viewed in the light most favorable to the prosecution, to find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This assignment of error has no merit.

TERROR PATENT DISCUSSION

The record was reviewed for errors patent, according to LA.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Wetland, 556 So.2d 175 (La.App. 5th Cir.1990). The review reveals no errors.
Accordingly, we affirm the Defendant’s conviction of distribution of marijuana, the finding that he is a second felony offender, and his enhanced sentence to 15 years in prison, at hard labor, without benefit of probation or suspension of sentence.
CONVICTION AND ENHANCED SENTENCE AFFIRMED.

. Although the Defendant has filed both a counseled brief and a pro se brief, there is only one assignment of error presented. The argument in each brief is the same.